IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CANDACE JULIAN, o/b/o minor child, C.G., )
)
      Plaintiff, )
)
  -vs- )   Civil Action No. 17-43
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Candace Julian o/b/o C.G., ("Julian") brings this action on behalf of her minor son, to challenge the denial by the Commissioner of Social Security Administration of C.G.'s application of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383c. Julian filed an SSI application on August 20, 2010.[2] Following a hearing before an ALJ, during which time C.G. did not testify, the ALJ denied the claims. Julian appealed. Pending are Cross Motions for

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.
[2] The state agency initially denied his claim and, following a hearing before an ALJ, his claim was denied on January 24, 2012. (R. 15-31) The Appeals Council denied Julian's request for review and Julian appealed to this Court. In September of 2014 a colleague remanded this case pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of an occupational therapy assessment. (R. 362-69). Upon remand, the ALJ ordered a consultative psychiatric and intelligence examination and a consultative pediatric examination. (R. 7240730, 735-744) Following an additional hearing, the ALJ denied benefits. This appeal follows.

1

Summary Judgment. *See* ECF docket nos. [14] and [19]. The issues are now ripe for review.

## Legal Analysis

1. <u>Standard of Review</u>

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

  2. Minor Claimants

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner follows a three-step sequential process in determining childhood disability: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether he or she has a medically determinable severe impairment; (3) and, if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §416.924.

An impairment, or combination of impairments, "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Torres o/b/o C.N.C. v. Comm'r. of Soc. Sec.*, Civ. No. 16-1743, 2017 WL 3783700, * 2 (D. N.J. Aug. 31, 2017) (citations omitted). "To determine whether an impairment medically equals a listing, the ALJ considers all of the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence." *Torres*, 2017 WL 3783700, * 2 (citations omitted). "If 'the child's impairment does not medically meet a listing … the examiner must determine whether the impairment functionally equals a listing.'" *Torres*, 2017 WL 3783700, * 2, *quoting*,

3

*Jaramillo v. Comm'r. of Soc. Sec.*, 130 Fed. Appx. 557, 560 (3d Cir. 2005). An impairment functionally equals a listed impairment if the child has "marked"[3] limitations in two domains of functioning or an "extreme"[4] limitation in one domain. 20 C.F.R. § 416.926(a). The six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(iv). When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments":

> (i)What activities are you able to perform?
> (ii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?
> (iii) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?
> (iv) Do you have difficulty independently initiating, sustaining, or completing activities? and
> (v) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2)(i)-(vi).

The evaluation of functional equivalence begins "by considering the child's functioning without considering the domains or individual impairments." *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach*, SSR 08-1p, 2009 WL 396031, * 1 (Feb. 17, 2009). The rules provide

---

[3] A "marked" limitation "seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(2).
[4] An "extreme" limitation "very seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(3).

that "'[w]hen we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and limitations and restrictions." *Id., citing*, 20 C.F.R. § 416.926(a)(c) Additionally, the rules instruct the Commissioner to:

> Look at information we have in your case record about how your functioning is affected during all your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community.

*Id., citing*, 20 C.F.R. § 416.926(a)(b). Then the severity of limitations in each affected domain are considered. This technique is called the "whole child" approach.

### 3. The ALJ's Decision

Here, the ALJ followed the law in applying the three-step sequential analysis. That is, he concluded that C.G. had not engaged in substantial gainful activity since the date of the application. (R. 342) He then determined that C.G. had the following severe impairments: hyperopia, acne, asthma, irritable bowel syndrome, a developmental coordination disorder, an attention deficit hyperactivity disorder, combined type, a reading disorder, primary insomnia, intellectual disability at the borderline level of functioning, and an intermittent explosive disorder. (R. 342) Turning to the third step of the analysis, the ALJ concluded that C.G. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 342) He then proceeded to consider the issue of functional equivalence. Ultimately, the ALJ found that C.G. does not have an impairment or combination of impairments that functionally equals the severity of the listings. (R. 343-357) As such, C.G. was adjudged not disabled. (R. 31)

5

Julian raises several issues on appeal. She challenges the ALJ's analysis in finding that C.G. failed to meet or equal one of the listings. She also contends that the ALJ's decision regarding functional equivalence is not supported by substantial evidence of record. Finally, she urges that the ALJ erred in giving significant weight to the opinion proffered by the state-agency psychological consultant. After thorough consideration, I reject each of Julian's assertions.

4. Listings 112.11 and 111.06

As set forth above, Julian argues that the ALJ failed to engage in any meaningful analysis with respect to whether C.G. met the requirements of either Listing 112.11 or 111.06. *See* ECF Docket No. 16, p. 11. According to Julian, this Court's decision in *Gardner v. Colvin*, Civ. No. 15-49, 2016 WL 861127 (W.D. Pa. March 7, 2016) supports her position that a cursory analysis of the listings requires a remand. In *Gardner*, the claimant urged that the ALJ failed to provide any substantive analysis regarding whether or not the claimant had met or equaled the Listing. I accepted this argument, noting that, "[i]n two sentences, the ALJ summarily concludes that 'the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations, necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any sub-section or section contained in Appendix 1.'" *Gardner*, 2016 WL 861127 at * 2. *See also, Shaffer v. Colvin*, Civ. No. 14-1380, 2015 WL 2064552 * 2 (W.D. Pa. May 4, 2015) (rejecting the ALJ's two sentence conclusion as insufficient and preventing "meaningful review.")

However, I decline Julian's invitation to find a parallel between the facts present in *Gardner* or *Shaffer* and those present here. Here, the ALJ specifically stated that

"[t]he specific signs, symptoms, findings and functional limitations are discussed under the functionally equals finding below." (R. 342) In other words, the ALJ makes clear that he analyzed the evidence at one time and that he found such evidence failed to support a finding of medical equivalence and functional equivalence. Indeed, the ALJ devoted approximately 15 pages to his analysis. As such, this case is distinguishable from that present in *Shaffer*, where I stated that "[w]hile I acknowledge that the ALJ discusses the evidence in the next section to determine whether Claimant has an impairment or combination of impairments that functionally equals the listing, he fails to make any reference to said evidence in determining if Claimant actually met or equaled the listing at §112.11. It is not for me to speculate that this is the exact evidence that the ALJ used in making his decision." *Shaffer*, 2015 WL 2064552, at * 2. Here, I find that the ALJ gave a thorough analysis of the medical evidence, the non-medical evidence, and of the opinion evidence. (R. 343-357) As such, the ALJ's decision allows for meaningful review. *See Santiago v. Comm'r. of Soc. Sec.*, 131 Fed. Appx. 344, 346 (3d Cir. 2005) (stating that "'approximately four and a half pages of the ALJ's decision are devoted to analyzing Guido's limitations with respect to the six domains of functioning, based on the medical evidence and school reports in the record.' That analysis allows for meaningful review, and we conclude that there is substantial evidence to support the ALJ's determination that Guido's medical status did not medically equal the criteria of a listed impairment."); *Cosby v. Comm'r. of Soc. Sec.*, 231 Fed. Appx. 140, 146-47 (3d Cir. 2007) (stating that, "in this case, the ALJ clearly evaluated the medical evidence and set forth his conclusion in an opinion that is capable of meaningful judicial review under *Burnett*. The ALJ's decision methodically analyzes Ashley's limitations with

respect to the six domains based upon the findings of "the medical evidence, opinion evidence, teacher forms and parent questionnaires").[5] Furthermore, the ALJ's decision in this regard is supported by substantial evidence of record as detailed below.

　　5. <u>Functional Equivalence</u>

Julian also argues that the ALJ erred with respect to his evaluation of the "functional equivalence" assessment. First, Julian contends that the ALJ erred in failing to apply the "whole child" approach to evaluating functional equivalence. I disagree. The ALJ clearly noted the need to evaluate the "whole child." (R. 343) (stating that, "the undersigned has evaluated the 'whole child' in making findings of functional equivalence.") Indeed, the ALJ explained that he first evaluated how C.G. functions in all settings and at all times, and as compared to other children of the same age who do not have impairments. (R. 343) The ALJ further considered the interactive and cumulative effects of all of C.G.'s impairments, including those not considered "severe," in all of the domains. (R. 343) The ALJ also evaluated the "type, extent, and frequency of help the claimant needs to function." (R. 343)

In fact, contrary to Julian's assertion, the ALJ recorded pages of findings regarding his "whole child" analysis. (R. 343-346) He acknowledged Julian's reports of C.G.'s concentration problems, difficulties with coordination, depth perception, and

---

[5] Julian adds that, under a "proper evaluation," the evidence establishes that G.C. meets the severity requirements of Listing 112. Julian does provide citations to the record in support of her contentions in this regard. Although the record may contain such evidence, the "question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings …. Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing, Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 362 F.3d 376, 379 (3d Cir. 2003)." *Hundley v. Colvin*, 2016 WL 6647913, * 2 (W.D. Pa. Nov. 10, 2016). Further, Julian provides no citation to the record in support of her contention that G.C. meets the severity requirements for Listing 111.06. Consequently, Julian's arguments are unconvincing.

maintaining sleep, as well has problems with vision, communication, learning, and attention / concentration. (R. 343) Similarly, he recognized that Julian reported that C.G. struggled to perform normal childhood activities, that he is disorganized, that he is unable to stay on task, that he loses his temper, and that he has problems caring for his personal needs. (R. 344) He also noted witness statements from Cyndi Julian and Samantha Julian. (R. 344)

Yet the ALJ cited to substantial evidence of record which supported his conclusion that the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." (R. 344) For instance, one of C.G.'s teachers indicated that C.G. had no difficulty completing class work or homework or sustaining attention during play or sports activities. (R. 344), *citing* Ex. 4E. Similarly, physicians reported that C.G. was alert and attentive, engaged in a normal level of activity, displayed a coherent thought process, and was doing well at school. (R. 344), *citing* Ex. 4E, 9F, 12F. The ALJ acknowledged that a March 2016 Teacher Questionnaire indicated that C.G. displayed some obvious problems, but also noted that C.G. "had only slight problems in focusing long enough to finish assigned activities or tasks, refocusing to tasks when necessary, completing class / homework assignments, completing work accurately without careless mistakes, working without distracting himself or others and working at a reasonable pace / finishing on time." (R. 345), *citing* Ex. 18E. The Teacher Questionnaire also revealed that C.G. did not display any problems in carrying out single step instructions, waiting to take turns, or changing from one activity to another. (R. 345), *citing*, Ex. 18E. The ALJ acknowledged the allegations of C.G. fighting at school, but pointed out that

9

C.G. 's teacher reported in March of 2016 that C.G. had "no problems in the domain of Interacting with Others and that the claimant's functioning in this domain was age appropriate." (R. 345), *citing* Ex. 18E. Dr. Bixler also described C.G. as having positive peer and family relationships and described his social functioning and community functioning and manner of relating and social skills as age appropriate. (R. 345) The ALJ cited to medical records indicating that C.G. did not suffer from any visual or hearing difficulties. (R. 345), *citing*, Ex. 21F. As to fine motor skills, the ALJ cited to numerous medical reports indicating that C.G. had normal coordination, normal strength, and normal range of motion in his upper and lower extremities for his age. (R. 345), *citing* Ex. 3F, 7F.[6] As such, I reject Julian's assertion that the ALJ failed to engage in a "whole child" analysis.

The ALJ then turned to a consideration of the six domains mentioned above. Specifically, the ALJ found that C.G. has a less than marked limitation in each of the six domains. (R. 343-357) Julian takes issue with respect to the ALJ's findings as to three of the six domains: acquiring and using information; attending and completing tasks; and interacting and relating to others. After careful consideration, I find that the ALJ's decision regarding these domains is supported by substantial evidence of record.

For instance, Julian's complaints with respect to the ALJ's findings regarding "acquiring and using information" center on the assertion that the ALJ failed to acknowledge certain of Dr. Bixler's findings which were favorable to C.G. and failed to

---

[6] The ALJ acknowledged that a January of 2011 evaluation revealed low scores in motor coordination, visual perception, and grip and pinch strength tests, but pointed to a July 2015 examination which revealed no significant abnormalities in the upper or lower extremities and an April 2016 examination revealed "intact hand and finger dexterity, 5/5 grip strength bilaterally, a normal gait and stance, 5/5 strength of the upper and lower extremities and normal range of motion of the spine and extremities." (R. 345-46)

reference a Teacher Questionnaire from January of 2012. *See* ECF Docket No. 16, p. 14. I reject both assertions. In fact, the ALJ acknowledged that Dr. Bixler made certain findings supportive of Julian's position but explained that these findings were not compelling in light of his other findings as well as other evidence of record. (R. 354-55).[7] Similarly, the ALJ discussed a Teacher Questionnaire from January of 2012 but did so in the context of opinion evidence. The ALJ simply found it to be unpersuasive in light of other evidence:

> The undersigned also notes that an additional Teacher Questionnaire was completed in January 2012 showing that the claimant had serious problems comprehending and doing math problems, expressing ideas in written form and organizing his own things or school materials with obvious problems in understanding school and content vocabulary, reading and comprehending written material and carrying out multi-step instructions (Exhibit 14E). However, Dr. Mushref reported in June 2011 that the claimant was doing well in school and receiving good grades (Exhibit 9F). Likewise, Dr. Kelly Kane reported in August 2014 that the claimant was doing well in school with no problems (Exhibit 17F). Moreover, Dr. Hromnak reported in April 2016 that the claimant was doing well in school and receiving excellent grades (Exhibit 19F). Finally, Dr. Ahmed reported in April 2016 that the claimant was able to read, watch television, color, draw and use the computer (Exhibit 21F). Accordingly, the undersigned affords limited weight to the above-referenced Teacher Questionnaire.

(R. 356). Moreover, the ALJ cited to substantial evidence of record supporting his conclusion that C.G. had less than a marked limitation in this domain. (R. 347)

With respect to the domain of "attending and completing tasks," Julian takes issue with the ALJ's discussion of Bixler's evaluation. According to Julian, the ALJ ignored Bixler's comment that "difficulty [was] noted in attending skills." *See* ECF Docket No. 16, p. 14. Yet, in discussing the opinion evidence, and citing to the same

---

[7] Perhaps Julian's confusion is with the fact that the ALJ discusses Bixler's reports both in the context of "acquiring and using information" and in his discussion of opinion evidence. I read the ALJ's opinion as a whole in determining whether substantial evidence supports the decision.

11

exhibit referenced by Julian, the ALJ explicitly acknowledged that, "Dr. Bixler completed a Childhood Medical / Psychological Source Statement of Functional Abilities in April 2016 indicating that the claimant *had some difficulties with attending skills* and following commands." (R. 354)(emphasis added)[8] Again, Julian also alleges that the ALJ failed to discuss the 2012 Teacher Questionnaire. As stated above, the ALJ did, in fact, address this Teacher Questionnaire and acknowledged that C.G. struggled with organizing his own things and school materials. (R. 355-56) The ALJ's decision that C.G. has less than marked limitation in attending and completing tasks is supported by substantial evidence of record. (R. 347-349), *citing*, Exs. 3F, 4E, 9F, 18E, 19F, 20F, and 21F.

Finally, Julian takes issue with the ALJ's finding that C.G. had less than a marked limitation in the domain of "interacting and relating with others." Julian's criticism is focused upon the ALJ's evaluation of C.G.'s history of fighting as well as his analysis of Dr. Hromnak's and Dr. Mushref's treatment notes. Although the record may contain evidence in support of Julian's assertions, the:

> Question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings. … Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing, Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 36 F.3d 376, 379 (3d Cir. 2003).

---

[8] Julian goes on to represent that: "[m]ore importantly, Dr. Bixler noted that 'competing stimuli, even light sensitivity or sound changes such as a fan in the HVAC system turning on distracted him." *See* ECF Docket No. 16, p. 14-15, *citing* (R. 732). Yet the ALJ's discussion of opinion evidence continues on to state, "[i]n addition, Dr. Bixler indicated that the claimant was distracted by competing stimuli…." (R. 354), *citing*, Ex. 20F, Bixler's Childhood Medical / Psychological Source Statement of Functional Abilities.

*Hundley v. Colvin*, 2016 WL 6647913, * 2 (W.D. Pa. Nov. 10, 2016). Here, substantial evidence supports the ALJ's conclusion that C.G. has less than marked limitation in interacting and relating with others. For instance, the ALJ cited to reports from Dr. Azad, Dr. Mushref, and Dr. Hromnak, indicating that C.G.'s temperament was calm and that his mood, affect, judgment and insight were normal, that he was doing well in school with good behavior, that his "intermittent explosive disorder symptoms were improved with his current medication regimen and a mental status evaluation revealed the claimant to be pleasant with good eye contact and no irritability or sadness." (R. 350), *citing*, Exs. 3F, 9F, 18F, and 19F. The ALJ also cited to Dr. Bixler's report that C.G. was "cooperative, friendly and relaxed … [and] had positive peer and family relationships" and that his "social functioning and community functioning were adequate and that the claimant's manner of relating and social skills were age appropriate." (R. 250), *citing*, Ex. 20F. Similarly, the ALJ cited to two Teacher Questionnaires indicating that C.G. "had no problems making and keeping friends or following the rules," and that C.G. "had no problems in the domain of Interacting and Relating with Others and that the claimant's functioning in this domain was age appropriate." (R. 350), *citing*, Ex. 4E, 18E. Consequently, I find no basis for remand.

    6. <u>Psychological Consultant</u>

Finally, Julian contends that the ALJ erred in affording significant weight to the opinion of the State agency psychological consultant. *See* ECF. Docket No. 16, p. 17-18. John Vigna, Psy. D., completed an assessment of C.G. in December of 2010. (R. 47-49) After reviewing the evidence of record, Dr. Vigna concluded that C.G. had less than marked limitations in the domains of: acquiring and using information, attending

and completing tasks, interacting and relating with others, and caring for yourself. (R. 47-38) He found no limitations in the remaining domains. According to Julian, the ALJ's reliance on Vigna's opinion was erroneous because it predated much of the evidence of record. Yet, as Julian recognizes, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r. of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)*. In fact:

> [t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that in the opinion of the [ALJ] … may change the State agency medical … consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.

*Chandler,* 667 F.3d at 361 (citations omitted). *See also, De La Torre v. Berryhill*, Civ. No. 17-2023, 2018 WL 3388002, * 6 (M.D. Pa. July 12, 201*) Here, Julian did not present evidence of a subsequent deteriorating condition or an otherwise substantial change in C.G.'s medical condition following the issuance of Vigna's opinion. After careful review, I find that the ALJ appropriately considered all of the medical evidence and that his decision to accord opinion evidence particular weight is supported by substantial evidence of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CANDANCE JULIAN, o/b/o minor child, C.G., )
    Plaintiff, )
                                                       )
  -vs-                                     )         Civil Action No. 17-71
                                                       )
NANCY A. BERRYHILL,[9] )
COMMISSIONER OF SOCIAL SECURITY, )
                                                       )
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 12th day of September, 2018, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 14) is denied and Defendant's Motion for Summary Judgment (Docket No. 19) is granted.

                                           BY THE COURT:

                                           /s/ Donetta W. Ambrose
                                           Donetta W. Ambrose
                                           United States Senior District Judge

---

[9] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.